IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TERESA ANN CHAPMAN | § | |
| | § | |
| vs. | § | CIVIL ACTION 6:21cv206 |
| | § | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § § § § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying her application for Social Security benefits. The matter was referred to the undersigned for findings of fact, conclusions of law and recommendations for the disposition of the matter pursuant to 28 U.S.C. § 636(b)(1). Having considered Plaintiff's brief (ECF 15), the Commissioner's responsive brief (ECF 16), and Plaintiff's Reply (ECF 17), the undersigned recommends that the Commissioner's final decision be **AFFIRMED** and that the above-styled lawsuit be **DISMISSED WITH PREJUDICE**.

**PROCEDURAL HISTORY**

Plaintiff filed an application for supplemental security income on January 9, 2019, alleging disability beginning on January 1, 2017. The application was denied initially on April 24, 2019, and again upon reconsideration on June 27, 2019. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing and entered an unfavorable decision on December 22, 2020. Plaintiff sought review from the Appeals Council. On March 24, 2021, the Appeals Council denied the request for review. As a result, the ALJ's decision

became that of the Commissioner. Plaintiff then filed this lawsuit on May 25, 2021, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing

*Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id*.; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot

perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

The procedure for evaluating a mental impairment is set forth in 20 CFR §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 CFR §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 CFR §§ 404.1520a(c)(2–4), 416.920a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 CFR §§ 404.1520a(d), 416.920a(d). If the ALJ's assessment is "none" or "mild" in the first three areas of function, and is "none" in the fourth area of function, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 CFR §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 CFR §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 CFR §§ 404.1520a(d)(3) and (e)(2), 416.920a(d)(3) and (e)(2).

## ALJ'S FINDINGS

The ALJ made the following findings in his December 22, 2020 decision:

1. The claimant has not engaged in substantial gainful activity since January 9, 2019, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: major depressive disorder, generalized anxiety disorder, PTSD, left knee/foot/hip disorders, lumbar spine disorder and obesity (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently climb ramps and stairs and ladders, ropes and scaffolds, kneel, crouch, and crawl. The claimant can understand, remember, and carry out simple tasks and instructions, consistent with GED reasoning level 1 in this case. She can have occasional interaction with the general public. She can work in proximity with coworkers and supervisors but can only occasionally perform tandem tasks or teamwork. She can adapt to changes and respond to customary work pressures in a routine environment.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on September 4, 1970 and was 48 years old, which is defined as a younger individual age 18–49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 9, 2019, the date the application was filed (20 CFR 416.920(g)).

# ADMINISTRATIVE RECORD

*Administrative Hearing*

Plaintiff testified at her hearing before the ALJ on December 4, 2020. She stated that she lives alone and does not drive because she does not have a vehicle. Plaintiff testified that she completed the eighth grade. She can read a short set of instructions, write a short note and make change out of a dollar after a few attempts. Plaintiff stated that she stopped working as a part-time cashier after her son passed away because her mental status declined. She asserted that she cannot work due to problems with concentration and completing assigned tasks. Plaintiff testified that she lost interest in everything and does not enjoy doing things she used to enjoy. She sees a psychiatrist and takes medications. Plaintiff stated that the medications help her to not cry all day. Plaintiff explained that she has had difficulty getting counseling due to COVID-19 limitations. Plaintiff also stated that she has been taking her mother's death very hard and has nightmares.

Plaintiff testified that she takes the bus to the store but she stays home most of the time due to anxiety. She also stated that she does not have any friends and does not see her boyfriend because he is incarcerated. Concerning her physical symptoms, Plaintiff stated that she has pain in her left ankle, knee and hip. She explained that her doctor has not been able to determine the cause of her pain. She received a shot for pain that initially helped but subsequent injections have not helped her pain. Plaintiff stated that she needs breaks walking to her mailbox due to pain. She also has back pain when she lifts something heavy. Plaintiff estimated that her back pain flares up every other week. She stated that she can only stand five to ten minutes at a time and sit ten minutes at a time.

A vocational expert, Dr. Talesia Beasley, also testified at the hearing. Dr. Beasley classified Plaintiff's past work as: (1) hand packer, DOT 920.587-018, medium, SVP 2; (2) cashier,

DOT 211.462-014, light, SVP 3; and (3) fabric tagger, DOT 589.687-022, light, SVP 2. The ALJ presented Dr. Beasley a hypothetical of an individual with Plaintiff's age, education and work experience who can perform light work, frequently, but not constantly, climb ramps and stairs and ladders, ropes and scaffolds, kneel, crouch and crawl. The individual can only understand, remember and carry out simple tasks and instructions consistent with GED reasoning level one, she can have occasional interaction with the general public, she can work in proximity with coworkers and supervisors, but can only occasionally perform tandem tasks or teamwork, and she can adapt to changes and respond to customary work pressures in a routine work environment. Dr. Beasley testified that the hypothetical individual cannot perform Plaintiff's past work.

Dr. Beasley identified the following jobs at the light, unskilled level that the hypothetical individual could perform: (1) garment tagger, DOT 794.687-054, light, SVP 1, with 4,647 jobs in Texas and 63,820 jobs in the national economy; (2) hat and cap drawing room attendant, DOT 581.687-014, light, SVP 1, with 3,254 jobs in Texas and 44,110 jobs in the national economy; and (3) housekeeper, DOT 323.687-014, light, SVP 2, with 4,961 jobs in Texas and 72,397 jobs in the national economy. Dr. Beasley clarified that all three jobs have a reasoning level of one and stated that her testimony is consistent with the Dictionary of Occupational Titles.

The ALJ presented a second hypothetical adding that the individual can only concentrate in thirty-minute increments before going off-task and requiring reminders from coworkers or supervisors to return to job tasks. Dr. Beasley testified that the individual could not maintain competitive employment without the ability to concentrate two hours at a time without being redirected. She also stated that more than one absence per month with a doctor's note would preclude competitive employment. Dr. Beasley testified that there are no transferable skills if the hypothetical is changed to sedentary work.

*Medical Record*

A left knee X-Ray on October 17, 2016 showed mild osteoarthritic change. Plaintiff saw Dr. Himabindu Ramireddy on October 31, 2016 to re-establish care. Plaintiff complained of knee pain and depression. On examination, Plaintiff had normal range of motion, reflexes, muscle tone and coordination and no edema. Plaintiff exhibited a depressed mood but her speech, judgment and thought content, cognition and memory were normal. Dr. Ramireddy recommended a knee brace, ice and etodolac for knee pain and prescribed Zoloft for moderate single current episode of major depressive disorder.

On March 28, 2019, Dr. F.P. Reuter completed a consultative physical examination. Plaintiff reported discomfort in her left hip and foot. Plaintiff was able to pick up a paper clip with either hand, her lower extremities showed good reflexes, strength was good, straight leg raises were unremarkable, Plaintiff was able to stand on either foot, Plaintiff was able to squat, and Plaintiff could bend to ninety degrees. Examination of the left foot showed a normal appearance and circulation was preserved. An X-Ray of the left hip showed no acute findings and a left foot X-Ray showed primary osteoarthritis. Dr. Reuter noted that Plaintiff was ambulatory with a limp favoring the left lower extremity.

Laci Morgan, Psy.D., completed a consultative clinical interview and Psychological Report on April 10, 2019. Plaintiff was responsive and cooperative during examination and her interaction with the examiner was appropriate. Plaintiff showed no evidence of thought disorder and thought processes were rational and goal oriented. Plaintiff appropriately used generalizations and abstractions. Her thought content appeared congruent to her mood and circumstances with normal and logical thought organization. Plaintiff denied suicidal thoughts. Plaintiff had no evidence of preoccupations, although she reported experiencing recent visual hallucinations,

worsening upon her son's death. Plaintiff's affect was sad and her mood was depressed. She appeared to experience anxiety during the examination. Plaintiff did not appear confused and was oriented to person, time, situation and object. She exhibited below average intelligence, was unaware of current events, exhibited an impoverished fund of knowledge and her ability to engage in abstraction appeared affected. Plaintiff's remote memory was judged to be adequate but her immediate memory appeared inadequate. Plaintiff had difficulty with repetition of five numbers forward and four numbers in reverse. Recent memory was adequate. Plaintiff's concentration appeared affected because she could not complete serial sevens from one hundred or serial threes from twenty. She was able to spell the word "world" backwards and mentally perform addition, subtraction, and multiplication of single and two-digit numbers without errors. Plaintiff's judgment for hypothetical situations was adequate and her insight appeared intact. No psychological tests were administered.

Dr. Morgan diagnosed major depressive disorder, severe with psychotic features, generalized anxiety disorder and post-traumatic stress disorder. She opined that Plaintiff's prognosis for ability to reason and to make occupational, personal, and social adjustments is poor and her functional level will likely remain the same absent treatment. She stated that Plaintiff will struggle to deal with normal pressures in a competitive work setting. She also determined that Plaintiff may struggle with the ability to understand, remember instructions, and apply information for step-wise activities due to remarkable depression, anxiety and PTSD. She stated that Plaintiff may also struggle to follow oral instructions, to follow through and carry out work related tasks independently, and with attention and concentration. She is able to use reason and judgment when working, but may struggle making work-related decisions independently and may have difficulty maintaining regular attendance.

On September 27, 2019, Plaintiff went to Crossroads Family Care to establish care. Brenda Fountain, FNP-C, noted appropriate mood and affect, full extremity range of motion, and coordinated and even gait. Plaintiff's cholesterol was high and her blood pressure was elevated at 156/95. FNP Fountain encouraged a low fat, low sodium diet, smoking cessation and physical activity. She started Plaintiff on Lisinopril for hypertension. At a follow up on August 3, 2020, Plaintiff received a Toradol injection for left sciatic nerve pain. Plaintiff complained of left leg pain on November 18, 2020. She requested another Toradol injection. On examination, Plaintiff had full range of motion in all joints, negative straight leg raises, no swelling or deformity, normal motor examination in the legs and paralumbar tenderness.

Plaintiff had a depression screening on November 13, 2019. Plaintiff exhibited a depressed affect, goal directed thought processes, intact associations, passive suicidal ideation with no active thought or intent, good judgment and insight, good fund of knowledge, good memory, and good focus and concentration. Jeremiah Sanders, APRN, PMHNP-BC, diagnosed depression with anxiety and prescribed Prozac and Clonidine HCI. At a follow up on December 18, 2019, Plaintiff complained that Prozac makes her feel lazy. Plaintiff's medications were changed to Effexor XR and Amitriptyline HCI. When she returned on January 27, 2020, Plaintiff reported that her mother was dying of cancer and she was having difficulties with feeling overwhelmed, thinking straight and sleeping. On February 5, 2020, Plaintiff called her provider to request Trazodone due to her mother passing away. At a follow up on February 26, 2020, Plaintiff stated that she had not slept since her mother died. Remeron was added to Plaintiff's prescription for Effexor XI and her prescriptions for Amitriptyline HCI and Trazodone HCI were stopped. On April 15, 2020, Plaintiff reported ongoing issues with sleep and anxiety but stated that she was looking forward to her boyfriend getting out of jail soon. She was started on Topamax. Plaintiff had a better mood and

euthymic affect on May 27, 2020. On a telephone follow up on August 5, 2020, Plaintiff's mood was good. She continued taking Topamax and Effexor XR. Plaintiff described continued difficulty processing her grief on October 5, 2020. NP Sanders refilled medications and recommended exercise and dietary changes to help with weight loss goals and to improve her mental and medical issues. Subsequently, on November 16, 2020, Plaintiff reported continued visits with her boyfriend and working towards obtaining custody of her sister. NP Sanders described her mood as "better."

State agency consultants reviewed the medical records. On April 15, 2019, Dr. Laurence Ligon opined that the record supports a physical residual functional capacity ("RFC") for occasionally lifting and carrying twenty pounds, frequently lifting and carrying ten pounds, standing and/or walking for six hours in an eight-hour workday and sitting for six hours in an eight-hour workday with no postural or manipulative limitations. Dr. Scott Spoor reviewed the records on reconsideration and added postural limitations for frequent climbing of ramps or stairs, climbing ladders, ropes or scaffolds and kneeling.

Dr. Leela Reddy completed a mental RFC assessment on April 20, 2019 and concluded that Plaintiff is markedly limited in the ability to understand, remember and carry out detailed instructions and moderately limited in the ability to carry out very short and simple instructions, maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or in proximity to others without being distracted by them, the ability to make simple work-related decisions, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable

number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors and the ability to set realistic goals or make plans independently of others. She opined that Plaintiff is not significantly limited in other areas. More specifically, she stated that Plaintiff can understand, remember, and carry out only simple instructions, make simple decisions, and attend and concentrate on simple matters for extended periods. She can interact adequately with supervisors and coworkers and can respond appropriately to changes in a routine work setting. Matthew Snapp, Ph.D., agreed with Dr. Reddy's findings on June 27, 2019.

## DISCUSSION AND ANALYSIS

In her brief, Plaintiff identifies one issue for review—whether the ALJ's mental residual functional capacity ("RFC") determination is supported by substantial evidence because he failed to consider Dr. Morgan's opinion in accordance with the proper legal standards. When determining that Dr. Morgan's opinion is unpersuasive, Plaintiff submits that the ALJ only focused on examination findings and "ignored other information in treatment notes consistent with Plaintiff's allegations at the hearing and supportive of Dr. Morgan's opinion."[1] Plaintiff asserts that her allegations and Dr. Morgan's opinion are consistent with treatment notes documenting poor appetite, lack of interest, low energy and concentration difficulty. Plaintiff argues that the ALJ did not consider the entirety of the treatment notes and failed to consider the subjective evidence contained in those notes.

In response, the Commissioner contends that the ALJ properly evaluated Dr. Morgan's opinion. Applying the revised regulations for evaluating medical evidence, the ALJ evaluated Dr. Morgan's opinion and considered its supportability and consistency with the overall medical evidence of record. The ALJ referenced specific entries in the medical record that he determined

---

[1] Brief in Support of Plaintiff's Claim for Social Security Disability Benefits, ECF 15, at *9.

were inconsistent with Dr. Morgan's findings and ultimately concluded that Dr. Morgan's opinion is unpersuasive. The Commissioner further asserts that the ALJ properly considered Plaintiff's subjective complaints that are documented in the treatment notes and her testimony. The Commissioner submits that the ALJ's RFC finding is supported by substantial evidence.

In her reply, Plaintiff argues that the ALJ found the opinions of the State agency consultants persuasive, but their opinions were based solely on a review of Dr. Morgan's consultative examination. As a result, Plaintiff submits that the ALJ should have found Dr. Morgan's opinion, based on actual observation, more persuasive. Plaintiff further asserts that the subjective evidence of her functional abilities is not inconsistent with Dr. Morgan's opinion and the ALJ did not properly consider the subjective evidence.

It is the ALJ's responsibility to determine a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). That finding, however, must be supported by substantial evidence. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d at 452. On review, the Court will scrutinize the record to determine whether substantial evidence is present to support the ALJ's finding, but the Court cannot reweigh the evidence or substitute its judgment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971)).

The revised rules for the consideration and articulation of medical opinions apply to claims filed after March 27, 2017. 20 C.F.R. § 404.1520c. Plaintiff filed her application on January 9, 2019. Pursuant to 20 C.F.R. § 404.1520c(a), the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative

medical finding(s), including those from [the claimant's] medical sources." The ALJ evaluates the persuasiveness of the medical opinions and articulates the consideration of medical opinions, but the ALJ is not required to explain the consideration of each factor that is considered. 20 C.F.R. § 404.1520c(b). The "supportability" and "consistency" factors are most important. *Id*.

In his written decision, the ALJ addressed the opinions of Dr. Morgan and the State agency medical consultants. The ALJ noted Dr. Morgan's opinion that Plaintiff may struggle with the ability to understand, remember instructions, apply information for step-wise activities, follow oral instructions, maintain attention and concentration, make work-related decisions independently, and deal with normal pressures in a competitive work setting. The ALJ then stated:

> I find the opinion of Dr. Morgan unpersuasive. Admittedly, the opinion is supported to some extent by her examination findings of visual hallucinations, depressed mood with sad affect, and impoverished fund of knowledge. She was unable to state how a boat and automobile are similar. Immediate memory was inadequate as she had difficulty repeating 5 numbers forward and 4 in reverse. She recalled 2 of 3 objects after 5 minutes. She could not complete Serial 7s or Serial 3s (Exhibit 6F/5). However, [the opinion] is inconsistent with the medical evidence of record showing fewer deficits on treatment. Again, while the claimant has an abnormal mood or affect in mental status examinations, such examinations showed few if any other deficits (e.g., Exhibit 10F/3, 17, 24, 31; 11F/7–8).

Administrative Record, ECF 11-2, at *29 (Bates stamp p. 28). Conversely, the ALJ concluded that the prior administrative medical finding that Plaintiff had mild limitation to understand, remember, or apply information, moderate limitation to interact with others, moderate limitation to concentrate, persist, or maintain pace, and mild limitation to adapt or manage oneself was persuasive. The ALJ explained that the opinions of the State agency medical consultants are "supported by and consistent with the medical evidence of record showing conservative treatment with medication and no psychiatric hospitalizations." *Id*. at *30 (Bates stamp p. 29).

Before addressing the persuasiveness of the medical opinions and prior administrative findings, the ALJ summarized the treatment records and Plaintiff's subjective statements

15

concerning her impairments and functional abilities. The ALJ's summary includes treatment notes documenting severe depression, trouble sleeping, difficulty with concentration and mood swings, as well as notes from appointments when Plaintiff showed improvement, good judgment, insight, memory, focus and concentration. The ALJ noted that Plaintiff has been treated conservatively with medication management and the records show symptoms under control when Plaintiff takes her medication as prescribed. He pointed out a lack of hospitalization for mental impairments during the relevant period and a demonstrated ability to perform tasks such cleaning, cooking, vacuuming, laundry and grocery shopping.

Plaintiff alleges that the ALJ failed to consider evidence that supports her alleged functional limitations. The ALJ specifically pointed to treatment notes supportive of her allegations and determined that "the treatment evidence does indicate significant limitations." Administrative Record, ECF, 11-2, at *29 (Bates stamp p. 28). He also, however, referenced documentation showing normal concentration and memory and a lack of treatment evidence that would support the "near-total incapacity" that is alleged. *Id*. The ALJ further stated that Plaintiff's characterization of her impairments "may accurately capture her limitations immediately following her bereavement" over her mother's death, but there is no evidence that the exacerbation of her symptoms lasted for twelve months. *Id*. The record shows that the ALJ reviewed the entire record and properly considered the consistency and supportability of Dr. Morgan's opinion.

In addition, Plaintiff's assertion that the State agency medical consultants reviewing her mental health limitations only considered Dr. Morgan's opinion, and no other medical records, lacks merit. Their findings specifically reference a psychiatric evaluation on physical examination from October 31, 2016. Administrative Record, ECF 11-3, at *7 (Bates stamp p. 71). They also concluded that, with treatment, Plaintiff is likely to function higher than her presentation at her

consultative examination. *Id*. Importantly, Dr. Morgan made the same finding when she opined that Plaintiff's "functional level will likely remain the same without treatment." Administrative Record, ECF 11-10, at *54 (Bates stamp p. 319). The ALJ properly considered their opinions in the context of the entire medical record and determined that their opinions were consistent with the medical evidence of record showing conservative treatment with medication and no psychiatric hospitalizations.

The ALJ addressed both the supportability and consistency of each medical opinion and identified specific medical evidence to support his conclusions. Plaintiff has not shown that the ALJ failed to properly consider the opinion of Dr. Morgan in compliance with the revised regulations and his finding is supported by substantial evidence. The Commissioner's decision should be affirmed and the complaint should be dismissed.

## RECOMMENDATION

It is hereby **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED** and that this social security action be **DISMISSED WITH PREJUDICE**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on*

*other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 21st day of May, 2022.

*K. Nicole Mitchell*
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE